IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TAMI LEE POOLE                                                                    PLAINTIFF

VS.                                       CASE NO. 04-CV-1089

SOUTHERN ARKANSAS UNIVERSITY
TECHNICAL COLLEGE and WALTER CLAY                           DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendants Southern Arkansas University Technical College and Walter Clay. (Doc. No. 11). The Plaintiff has responded. (Doc. No. 18). The Defendants have filed a reply to Plaintiff's Response. (Doc. Nos. 20 and 21). The Court finds the matter ripe for consideration.

### BACKGROUND

Plaintiff, Tami Lee Poole, and Defendant, Walter Clay, worked as security officers for the Defendant, Southern Arkansas University Technical College ("SAU Tech"). Poole worked full time from Sunday through Thursday. Clay worked part time every other weekend until he was relieved by Poole on Sunday afternoon.

On the afternoon of February 9, 2003, Poole arrived for work, sat down at her desk, put her gym bag, which contained her loaded gun, on the floor next to her chair and began talking to Clay. After Poole retrieved the master keys from the security lock box, Clay made sexual advances toward her by hugging her, trying to kiss her, trying to put his hand down her shirt, putting her hand on his crotch, and putting his arms around her and rubbing himself up against

her. Poole broke free and Clay left.

Poole called Gerald Manning, the security officer supervisor, and reported the incident. Manning then called Clay and confronted him with Poole's allegations. Clay admitted to Manning that he kissed Poole but denied the remainder of Poole's account of what happened. Manning told both parties to write down their version of the incident and bring it to him the next day.

The next day, Manning informed Dr. Roger Worsley, SAU Tech's Chancellor, and Cheryl Jordan, of Human Resources, about Poole's accusations against Clay. Dr. Worsley immediately formed a committee of himself, Manning and Jordan to begin an investigation. During the investigation, both parties were interviewed. Clay acknowledged that he kissed Poole but contended that it was consensual. During the investigation, Manning was also told by Martha Stewart, another SAU Tech employee, that Clay had tried to get "kissy-faced" with her two or three years before.

After analyzing the information obtained in the investigation, the committee determined that Clay was involved in sexual misconduct and had violated SAU Tech policy[1]. Eleven days after the incident, Clay received a written reprimand and was placed on permanent probation. An attempt was also made to try and alleviate any contact between Poole and Clay. It was suggested to Poole that she work Monday through Friday instead of her current schedule of working Sunday through Thursday. Poole refused the committee's suggestion because she did not want to work on Friday. Since Poole did not want to change her work schedule, it was

---

[1] SAU Tech has a policy manual which contains the school's harassment policies. The security department does not have a special policy on harassment, rather, it follows SAU Tech's policy relative to sexual harassment.

suggested that Clay leave campus before Poole arrived and provide a written or telephone campus security report, so they would have no contact. Poole also refused this suggestion. Therefore, Poole continued to relieve Clay every other Sunday afternoon. She did not report any other incidents of sexual misconduct by Clay.

On May 12, 2003, Poole filed a Charge of Discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC"). She alleged a claim for discrimination based on sex in connection with the incident on February 9, 2003. The EEOC issued Poole a Right-to-Sue Letter.

In August 2004, Poole applied for a job with the Camden Police Department. In November 2004, the department offered Poole a job as a police officer. Shortly after receiving the letter extending her the offer, Poole was told by Chief of Police Boyd Good that the Mayor of Camden had told him to stop the hiring process because he had a personal policy against hiring employees who had pending lawsuits against other agencies. Poole talked to the Mayor and she was hired with no delay or change in salary. Poole began working for the Camden Police Department as scheduled on December 1, 2004.

On August 13, 2004, Poole filed this action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII")*,* by the Defendants SAU Tech and Walter Clay. Poole claims that she suffered sexual harassment based upon the February 9, 2003 incident and retaliation when an employee of SAU Tech informed a potential employer of her sexual harassment charge. The Defendants have filed a Motion for Summary Judgment as to all of Poole's claims. They contend that summary judgment is appropriate because: 1) Poole can not establish a *prima facie* case of hostile work environment sexual

harassment; 2) Poole can not establish a claim of retaliation because she did not suffer an adverse employment action; and 3) Poole can not maintain a Title VII claim against Walter Clay because he was not her employer as defined by Title VII. Poole has responded and contends that there are genuine issues of material fact as to her Title VII claims against Defendant SAU Tech but concedes the fact that she may not maintain a Title VII claim against Walter Clay. Therefore, the Court will grant Defendants' motion for summary judgment as to Defendant Walter Clay without discussion.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of Le Sueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 372 (8th Cir. 1987); *Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A

dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

*Poole's Sexual Harassment Claim against SAU Tech*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Courts generally recognize two types of sexual harassment as actionable under Title VII: 1) sexual harassment that is linked to the grant or denial of an economic *quid pro quo,* and 2) sexual harassment that creates an intimidating, hostile, or offensive working environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In this case, Poole does not allege that any inappropriate behavior was linked to the grant or denial of an economic *quid pro quo.* The Court will

5

therefore treat her claim as a hostile work environment claim.

An employee is subjected to hostile work environment sexual harassment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal quotations and citation omitted). To establish a *prima facie* case of hostile work environment sexual harassment by a non-supervisory co-worker, Poole must show that: 1) she belongs to a protected group; 2) she was subjected to unwelcome sexual harassment; 3) a causal nexus exists between the harassment and her membership in the protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Meriwether v. Caraustar Packaging Co.,* 326 F.3d 990, 993 (8th Cir. 2003)(*citing Jacob-Mua v. Veneman,* 289 F.3d 517, 522 (8th Cir. 2002)). Here, Defendant SAU Tech contends that the conduct which Poole complaints is not sufficiently severe or pervasive enough to affect a term, condition, or privilege of her employment or that it failed to take prompt remedial action. Therefore, they argue she cannot establish a *prima facie* case of hostile work environment sexual harassment and they are entitled to summary judgment as a matter of law.

Poole is a member of a protected class of individuals under Title VII and has alleged an instance of unwelcome sexual harassment because of her gender. To succeed on a hostile work environment claim, Poole must also show that the alleged harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of her employment. *Ducan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). "[A] sexually objectionable environment must

be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In determining whether the alleged conduct is sufficiently severe or pervasive, the courts look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. at 23, 114 S.Ct. 367. To support such a cause of action, the "action must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Alagna v. Smithville R-II School Dist.* 324 F.3d 975, 980 (8th Cir. 2003)(*citing Faragher,* 524 U.S. at 788, 118 S.Ct. 2275; *Duncan,* 300 F.3d at 934).

Here, Poole relates only one incident in support of her claim of a hostile work environment. She claims that when she relieved Walter Clay on the afternoon of February 9, 2003, he made sexually advances toward her by hugging her, trying to kiss her, trying to put his hand down her shirt, putting her hand on his crotch, and putting his arms around her and rubbing himself up against her. While Clay's conduct appears to be totally inappropriate, there is no evidence that Poole was physically threatened by the conduct (she did not attempt to reach her weapon during the incident), that the sexual advances interfered with her work performance (she continued to work even after Manning asked her if she wanted to go home) or that Clay ever made such sexual advances toward her again. Viewing these facts in a light most favorable to Poole, the Court does not find this lone incident to be sufficiently severe or pervasive enough to alter the conditions of Poole's employment and create an abusive working environment. *See Faragher,* 524 U.S. at 788 (finding isolated incidents (unless extremely serious) will not amount

to discriminatory changes in the "terms and conditions of employment."); *Meriwether,* 326 F.3d at 993 (finding lone incident and subsequent encounter does not rise to level of severe or pervasive conduct); *Alagna,* 324 F.3d at 977-78, 980 (concluding that co-worker's conduct was inappropriate, but not sufficiently severe or pervasive to satisfy the high threshold for actionable harm). Poole may perceive her work environment to be hostile, but the Court does not believe that a reasonable person would find it to be "permeated with discriminatory intimidation, ridicule, and insult." *Harris,* 510 U.S. at 21, 114 S.Ct. 367; *see also National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). While this lone incident of sexual misconduct by Clay was inappropriate, it is not enough to alter the terms, conditions, or privileges of Poole's employment with SAU Tech. She has failed to establish the fourth element of her *prima facie* case as a matter of law.

SAU Tech also contends that Poole cannot meet her burden in proving the fifth element of her *prima facie* case. Under the fifth *prima facie* element, SAU Tech may be held liable for Clay's conduct only if SAU Tech "knew or should have know of the harassment and failed to take prompt remedial action." *Jacob-Mua,* 289 F.3d at 522. Prompt action shields an employer from liability when the harassing conduct is committed by a co-worker rather than a supervisor. *See Moisant v. Air Midwest, Inc.,* 291 F.3d 1028 1031 (8th Cir. 2002)(*citing Bailey v. Anchor Packaging,* 216 F.3d 720, (8th Cir. 2000)(*per curiam*)). The Court will consider several factors in assessing the reasonableness of an employer's remedial measures: the temporal proximity between the notice and the remedial action, the disciplinary or preventative measures taken, and whether the measures ended the harassment. *Stuart v. General Motors Corp.,* 217 F.3d 621, 631 (8th Cir. 2000).

In this case, when Poole's supervisor, Gerald Manning, was informed of the incident with Clay, he immediately confronted Clay with Poole's allegations and asked both parties to provide statements in regards to what happened. The next day, Manning informed the school's chancellor, Dr. Worsley, of Poole's allegations. Dr. Worsley formed a committee of himself, Manning and Cheryl Jordan of Human Resources to investigation the allegations. During the investigation, both parties were interviewed by Manning and Jordan. Within eleven days of the incident, it was determined by the committee that Clay was involved in sexual misconduct and had violated school policy. Clay received a written reprimand in his file and he was placed on permanent probation by the committee. The committee also attempted to alleviate any contact between Poole and Clay by suggesting that Poole change her work schedule to Monday through Friday or by Clay leaving campus before she arrived and providing her with a written security report. However, Poole rejected both of these suggestions.

Poole contends that SAU's response was not prompt because it knew of prior sexual harassment allegations against Clay and did nothing to solve the problem. However, SAU was not aware of Clay's prior conduct with Martha Stewart until after Poole's allegations and there is no evidence supporting Poole's allegation that a prior complaint was made against Clay by Marilyn Haigamiester, a former SAU Tech employee. What the evidence does show is that when SAU Tech first learned of Clay's possible sexual misconduct it acted immediately.

Poole contends that SAU Tech's response to her allegations against Clay was also inadequate. She contends that changing her work schedule to Monday through Friday or Clay leaving campus before she arrived and providing her with a written security report was punishing her rather than Clay. Poole wanted Clay fired. However, Title VII does not require

an employer to fire a harasser. *Bailey v. Runyon,* 167 F.3d 466, 468 (8th Cir. 1999). "Rather, what an employer must do is take 'prompt remedial action reasonably calculated to end the harassment.' " *Davis v. Tri-State Mack Distributors, Inc.,* 981 F.2d 340, 343 (8th Cir. 1992)(*quoting Barrett v. Omaha Nat. Bank,* 726 F.3d 424, 427 (8th Cir. 1984)).

Here, SAU Tech did that. It immediately investigated Poole's allegations, determined that Clay was involved in sexual misconduct, placed a written reprimand in his file and placed him on permanent probation. Clay did not sexually harass Poole again even thought they continued to have contact every other weekend when Poole relieved him on Sunday afternoon. SAU Tech's actions were prompt and effective, as a matter of law.

Poole has failed to establish two of the five elements of her *prima facie* case as a matter of law. Therefore, her hostile work environment sexual harassment claim must fail. The Defendant SAU Tech is entitled to summary judgment on this claim.

*Poole's Retaliation Claim against SAU Tech*

Poole has also alleged that SAU Tech retaliated against her in violation of Title VII when an employee of SAU Tech informed a potential employer about her sexual harassment charge. A claim for retaliation pursuant to Title VII is not based upon sex discrimination, but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination. *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). In order to establish a claim for retaliation under Title VII, Poole must show: 1) that she filed a charge of harassment or engaged in other protected activity; 2) that SAU Tech subsequently took adverse employment action against her; and 3) that the adverse action was causally linked to her protected activity. *Cross v. Cleaver,* 142 F.3d 1059, 1071 (8th Cir. 1998). In this case, there is no dispute that Poole

engaged in a protected activity when she filed her charge of sexual harassment against Clay. The dispute arises as to whether SAU Tech took an adverse employment action against Poole.

Poole claims that when Robert White, an employee of SAU Tech, told the Mayor of Camden that she had filed a sexual harassment claim at SAU she suffered from an adverse employment action. She did not. In order for an action to be an adverse employment action it must result "in a 'material employment disadvantage' such as 'termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects.' " *Okruhik v. University of Arkansas,* 395 F.3d 872, 879 (8th Cir. 2005)(*quoting Duncan v. Delta Consol. Indus.,* 371 F.3d 1020, 1026 (8th Cir. 2004), in turn *quoting Spears v. Missouri Dep't of Corrections & Human Res.,* 210 F.3d 850, 853 (8th Cir. 2000)). Poole has not shown that she suffered any such employment disadvantage in regards to her new job with the City of Camden. She went to work for the Camden Police Department as scheduled and at the same pay as offered despite the fact that the Mayor knew she filed a sexual harassment claim at SAU Tech. Poole claims that there was a limited period of time that the Mayor chose not to proceed with the hiring process, therefore, there was the potential for adverse impact. However, the potential for harm is not enough. Poole was in fact hired by the Camden Police Department at the same pay and employment date as originally offered. The Court finds that Poole did not suffer an employment disadvantage as a result of SAU Tech or its employee informing the Mayor of Camden of her charge of sexual harassment. She has not satisfied the second element of her *prima facie* case of retaliation in regards to this claim. The Defendant SAU Tech is entitled to summary judgment on this claim of retaliation.

Poole also claims that she suffered an adverse employment action when SAU Tech

suggested that she change her work schedule so she would not come in contact with Walter Clay. "Proof of an adverse employment action requires a tangible change in duties or working conditions that constitute a material disadvantage." *Phillips v. Collings,* 256 F.3d 843 (8th Cir. 2001). Here, no action was taken against Poole in regards to her schedule. She rejected SAU Tech's suggestion and her schedule remained the same. Poole also admits that she did not suffer any further contact with Walter Clay. She did not suffer a tangible change in her duties or working conditions. The fact that Poole was asked to change her schedule and Clay was not is not an adverse employment action. She has not satisfied the second element of her *prima facie* case of retaliation in regards to this claim. The Defendant SAU Tech is entitled to summary judgment on this claim of retaliation.

## CONCLUSION

For reasons discussed herein and above, the Court finds that Defendants Southern Arkansas University Technical College and Walter Clay's Motion for Summary Judgment should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, shall be issued.

IT IS SO ORDERED, this 25th day of April, 2006.

    /s/Harry F. Barnes
    Hon. Harry F. Barnes
    United States District Judge